(No. 31692.—

THE PEOPLE OF THE STATE OF ILLINOIS, by Ivan A. Elliott, Attorney General, Appellee, *vs.* FRANCES RIVERS MOCZEK *et al.,* Appellants.

*Opinion filed November 27, 1950.*

374

FLETCHER & NELSON, of Morrison, (L. W. NELSON, of counsel,) for appellants.

IVAN A. ELLIOTT, Attorney General, of Springfield, (M. BROOKS BYUS, BART E. SCHMITT, and RICHARD L. COOPER, of counsel,) for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

This appeal presents for decision the construction of paragraph 5 of section 1 of the Inheritance Tax Act which, to the extent relevant, declares: "When the beneficial interests to any property or income therefrom shall pass to or for the use of  *  *  *  any person to whom the deceased, for not less than ten years prior to death, stood

in the acknowledged relation of a parent: Provided, however, such relationship began at or before said person's fifteenth birthday and was continuous for said ten years thereafter. And, provided, also that one of the parents of such person so standing in such relation shall have been deceased when such relationship commenced, * * *." Then follows the rate of tax. Ill. Rev. Stat. 1949, chap. 120, par. 375.

The county judge of Whiteside County found Frances Rivers Moczek to be the mutually acknowledged child of William Boyd, deceased; that the appraised fair market value of her share of his estate was $77,161.94, and that there was owing to the State for inheritance, transfer and succession taxes on her share of Boyd's estate, $1286.48. Upon appeal, the county court found that she did not qualify as the acknowledged child of the decedent, set aside the order entered by the county judge, and adjudged that the inheritance taxes should be assessed at $9929.91. From this judgment, Frances Rivers Moczek and John A. Riordon, executor of Boyd's last will and testament, prosecute this appeal.

From the stipulation it appears that William Boyd, a resident of Whiteside County, died testate on March 22, 1949. His wife, Nettie Boyd, had predeceased him. Frances Rivers was born on August 9, 1913. Her mother, Lydia Rivers, was twenty-three years of age at the time of her daughter's birth. Frances Rivers was an illegitimate child. Lydia Rivers entered the employ of William and Nettie Boyd as a maid when her daughter was about six months of age. The latter resided there until Boyd's death thirty-five years later. For several years before Frances Rivers attained her fifteenth birthday, William and Nettie Boyd desired and wished to adopt her and, on numerous occasions, talked to and with Lydia Rivers, informing her of their desire to adopt her daughter, Frances. On these occasions, Lydia Rivers always refused to give her consent

to the adoption and, further, informed Boyd and his wife that if they persisted in the adoption of her daughter, she would leave their home and take her daughter from them.

Lydia Rivers lived a secluded life, told no one of her parents or relatives, and her daughter, Frances, has no knowledge of any father or of any relatives of her mother. When Frances was about twelve years of age, her mother began to develop mental trouble, being obsessed with the fear that her daughter might meet the same fate she had suffered as a young woman. Her mental condition steadily deteriorated and, in June, 1930, it became necessary to commit her to the East Moline State Hospital for the Insane, where she has since remained a patient. Prior to her commitment, she continued in Boyd's home as a maid. Lydia Rivers never accused the natural father of her daughter, Frances.

Boyd treated Frances Rivers in every way and manner as his own child, supported and maintained her, provided for her education in the public schools and in college, and bestowed his love and affection on her and did for her everything which would have been possible had she been his own child. After making several minor bequests and legacies, Boyd, by his will, devised and bequeathed to Frances Rivers Mozcek, naming her "my foster daughter," all of the remainder of his estate.

Upon motion of the executor, additional evidence was heard. Frances Moczek testified that her mother was committed to the State Hospital at East Moline in 1923; that her mother came to this country when quite young and was employed as a maid by Harriett M. Baldwin, a resident of DeKalb; that, in 1939, she went to DeKalb in response to a letter from Miss Baldwin saying that she had something to tell her; that Boyd accompanied her on this visit and was present when the conversation narrated took place; that Miss Baldwin informed her that, during the period of Lydia Rivers's pregnancy, she told her the name

of the father of her child, and that Miss Baldwin told her, Frances Moczek, that her father died during World War I. Frances Moczek testified, further, that she had no independent knowledge of her father, her only knowledge having been obtained through Miss Baldwin. Harriett M. Baldwin, it appears, died in 1946. Counsel for the People made a motion to strike the foregoing testimony but the record does not disclose any ruling on the motion.

Seeking a reversal, the appellants, Frances Moczek and the executor of Boyd's will, say that the single material issue presented is whether the former qualifies as a mutually acknowledged child of William Boyd, deceased, and, accordingly, is entitled to the inheritance tax exemption and rates as a mutually acknowledged child, conformably to section 1 of the Inheritance Tax Act. The applicable statute describes persons of the class under which Frances Moczek seeks to qualify as standing in the "acknowledged relation of a parent." The question is thus narrower than stated by appellants, being simply whether Frances Moczek qualifies as a child to whom William Boyd stood in the acknowledged relation of a parent. In short, the first question is whether William Boyd stood in the position of an acknowledged father to Frances Rivers Moczek and not whether she was a mutually acknowledged child, that is, one acknowledged by both Boyd and herself. The stipulated facts disclose that William Boyd stood in the acknowledged relation of parent to Frances Moczek. The relationship commenced at an early age. The law does not require that the exact date be fixed, the statute merely requiring that the relation be acknowledged, and the parent is, of course, the one to acknowledge it. The relationship may well be one which grows over a period of time. Here, the facts proclaim an acknowledged relationship of parent and child between Boyd and Frances Moczek over a long period of time, a relation which commenced before the child was fifteen years of age. Any lingering doubt is dispelled by

his description of her in his will, naming her his "foster daughter," and devising and bequeathing to her the bulk of his substantial estate.

The People direct attention to the fact that Lydia Rivers exerted parental care and control over her daughter until after her fifteenth birthday. The stipulation discloses that the mother developed mental trouble when her daughter was but twelve years of age and the evidence discloses, further, that Lydia Rivers was first committed to the State Hospital in 1923 when her daughter, Frances, was only ten years of age. A concession that Lydia Rivers exercised parental control does not aid the People for the reason that her parental control would not necessarily have precluded William Boyd from standing in the relation of an acknowledged parent. Many situations suggest themselves, among others, the relationship of stepfather and stepchild where one parent is still living and the stepfather stands in the acknowledged relation of a parent. In other words, the two relationships, the one of natural parent and the other of acknowledged parent, are not mutually exclusive. They can, and often do, as here, exist side by side at one and the same time.

The quoted statutory provision is unusual in its requirement with respect to the death of a parent. Not only must the acknowledged relation of a parent exist, but one of the parents of the person standing in this relationship, it is required, shall have been deceased when the relationship commenced. Our statute was adopted from the Transfer Tax Act of the State of New York. When a statute is adopted from another State, the judicial construction previously placed on the statute by the courts of that State accompanies it, and is treated as incorporated therein. (*People* v. *Linn*, 357 Ill. 220; *People* v. *Synder*, 353 Ill. 184.) *Matter of Beach*, 154 N.Y. 242, construed the provision of the Transfer Tax Act of New York which exempted from taxation transfers of property not exceeding

$10,000 in value to "any person to whom any such decedent * * * for not less than ten years * * * stood in the mutually acknowledged relation of a parent," to mean that a testator may sustain to a person not of his blood, and not legally adopted, the relation of parent so as to entitle such person to the benefit of the exemption. Holding that both legitimates and illegitimates come within the statutory meaning of the word "person," and that the words "mutually acknowledged" were used as equivalent to the words "mutually recognized," the New York Court of Appeals said: "The clause, we think, was intended to have a broader scope; to include, among others, those cases, not infrequent, where a person without offspring, needing the care and affection of some one willing to assume the position of a child, takes, without formal adoption, a friend or relative into his household, standing to such person in *loco parentis,* or as a parent, and receives in return filial attention and service."

The language quoted states the legislative intent in creating the status of a mutually acknowledged child in New York and an acknowledged child in Illinois. Section 1 of our Inheritance Tax Act describes a group of persons who have a close domestic relationship to the decedent, including not only blood relatives but adopted children, spouses of children, spouses of deceased children and, in addition, persons not related by blood or qualifying as sons or daughters-in-law, and, also, those who have for many years lived with or had a close relationship to the decedent, namely, acknowledged children. The latter now include stepchildren. When, however, our Inheritance Tax Act originally required both parents of a child to whom the decedent stood in the acknowledged relation of a parent to be deceased when the relationship commenced, stepchildren were excluded from the exemption of section 1. (*People* v. *Tatge,* 267 Ill. 634.) The period of ten years is fixed for the purpose of showing a *bona fide* relationship,

and the requirement that it must start before the child's fifteenth birthday reveals the legislative intent to have the relationship begin at a time when children greatly need the care and affection of parents. The condition that one parent must be deceased at the time the relationship commences was made, without question, for the reason that a child with only one parent living is a child most likely needing the care and affection of one assuming the position of a parent.

The contention is made that a child with only one parent at any time, such as Frances Moczek, occupies the identical position of a legitimate child who had two parents originally, one of whom has since died. Appellants have recourse to the familiar rule that, at common law, an illegimate child was nobody's child. He was described as *filius nullius* and, sometimes, *filius populi*. (*Murrell* v. *Industrial Com.* 291 Ill. 334; *Gorden* v. *Gorden*, 283 Ill. 182; 1 Blackstone's Commentaries, p. 458.) As observed in the *Murrell case*, "He was without parents or kindred, without name, without heritable blood and without many rights. He could have no heirs except his own lineal descendants. He could not even inherit from his mother or she from him. His settlement did not follow his mother but was wherever he was born. His parents were under no legal obligation for his support. This is his condition in Illinois to-day except as it has been changed by statute." The common-law rule has been abrogated in Illinois so as to make him the lawful child and heir of his mother. (*Smith* v. *Garber,* 286 Ill. 67.) The precise question is thus whether an illegitimate child, having one living parent, and the other unknown, stands in the same position as a legitimate child with one parent deceased. We note that, in the present case, the actual father of Frances Moczek, so far as the record discloses, never in any way or at any time acknowledged his paternity. Nor was a paternity charge ever made against him. Frances Moczek does not

know his identity and the only person who could identify him is, by reason of her long mental incapacity, unable, if not, as previously, unwilling to do so. So far as Frances Moczek is concerned, when Boyd assumed the relation of acknowledged parent to her, she was in the same position as a legitimate child whose father was dead. In such situations, there is the difference that, in the case of an illegitimate child whose father is and always has been unknown, the child may very well be said to have never had but one parent. For all practical purposes, this is true.

Admitting that illegitimates are included within the word "person" employed in section 1 of the Inheritance Tax Act, (*Matter of Beach,* 154 N.Y. 243,) the People maintain that, as a matter of law, the mother of an illegitimate child must be deceased if the child is to be deemed a person to whom the decedent stood in the relation of an acknowledged parent under the Inheritance Tax Act. In most cases, where an illegitimate child seeks the benefits of the statute, proof that a named father existed and is deceased is impossible. To hold that the mother must be deceased would mean that, in relatively few, if any, cases could an illegitimate child qualify as a person described in the statute. We are not warranted, under the guise of statutory construction, of imputing to the General Assembly an intent to confer merely a still-born right to persons falling within the same class as Frances Moczek. The inheritance exemption represents a generous gesture to persons to whom decedents stood in the relation of acknowledged parents. To accept the People's construction of the statutory requirement that one of the parents of the child be deceased at the time the relationship of acknowledged parent commenced would largely, if not completely, nullify the beneficent legislative intent expressed. For the purposes of qualifying under section 1 of the Inheritance Tax Act as the beneficiary of one who stood in the position of an acknowledged parent, the distinction between the non-

existence and the death of a parent prior to the time the relation of acknowledged parent begins is a distinction without a difference. Since statutes are to be construed according to their intent and meaning, a situation which is within the object, spirit and meaning of a statute is regarded as within the statute although not within the letter. (*Burke* v. *Industrial Com.* 368 Ill. 554.) Conversely, a situation within the letter is not regarded within the statute unless also within its object, spirit and meaning. (*People ex rel. Simpson* v. *Funkhouser,* 385 Ill. 396.) The present factual situation is clearly within the spirit and purpose, if not the letter, of section 1 of the Inheritance Tax Act. Again, the Inheritance Tax Act imposes a special tax and, in cases of doubt, its language is to be construed strictly against the State and in favor of the taxpayer. *People* v. *Snyder,* 353 Ill. 184; *People* v. *Continental Illinois Bank and Trust Co.* 344 Ill. 123; *In Re Estate of Ullmann,* 263 Ill. 528.

In *People* v. *Snyder,* 353 Ill. 184, the testator devised one tenth of his residuary estate to Noble E. Snyder who was the husband of the testator's deceased daughter. The statute naming those entitled to the highest exemption included the "wife or widow of the son or the husband of the daughter," of the testator. The language of the statute was clear that either the wife or widow of a son of the testator was entitled to the exemption and it made the same provision for only the husband of a daughter of the testator. This court nevertheless held that the term "husband of the daughter" included the widower of a deceased daughter of the donor even though the word "husband," as generally defined, means a man having a wife and does not include a widower. Assuredly, if the term "husband of the daughter" includes the widower of a deceased daughter, the requirement that one of the parents of a person standing in relation of the acknowledged child shall have been deceased when the acknowledged relation of a parent commenced should be and is deemed to mean that, where,

as here, the father of an illegitimate child is and always has been unknown, he was deceased, within the contemplation of the statute, when the relationship commenced.

The judgment of the county court is reversed and the cause is remanded to that court, with directions to proceed in conformity with the views expressed in this opinion.

*Reversed and remanded, with directions.*