(No. 32858.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.*
THE NORTHERN TRUST COMPANY *et al.*, Appellees.

*Opinion filed May 24, 1954—Rehearing denied September 14, 1954.*

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA GROVES, and HARRY A. ASH, of counsel,) for appellant.

MILLER, GORHAM, WESCOTT & ADAMS, of Chicago, (HERBERT C. DE YOUNG, of counsel,) for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal from a judgment of the county court of Cook County, affirming an order of the county judge, which fixed the inheritance tax due upon a legacy to Richard A. Rice, a nephew of May Rice Jenkins, deceased, and alleged by Rice to stand in the acknowledged relation of a parent within the contemplation of section 1 of the Illinois Inheritance Tax Act as it stood in 1949. The appeal comes directly to this court because the public revenue is involved.

The primary question in the case, under the admitted facts as stated in the record, is whether Richard A. Rice is shown by the evidence to be a person to whom the

deceased, May Rice Jenkins, stood in the acknowledged relation of a parent under the proper construction of said statute.

The county judge answered the question in the affirmative and assessed Richard A. Rice's tax at the sum of $21,026.66. On appeal to the county court this assessment was confirmed.

Under this appeal it is the contention of the Attorney General that Rice's accession under the will should have been taxed to him as decedent's nephew and not as her acknowledged child. If his contention is correct, the tax to be imposed upon Rice would be $49,162.67 instead of $21,026.66.

The testimony in the record and the stipulation of facts show that the decedent, May Rice Jenkins, died on December 13, 1950. She had been married only once and her only child, a son, died in infancy. Under the terms of her will, she bequeathed to a nephew, Richard A. Rice, a life estate in a trust with the Northern Trust Company, estimated at the value of $81,650.87; and the residue of her estate amounting to $267,136.85 which, together with other property, made the total value of the estate left to Richard Rice, $359,088.62.

Richard A. Rice, the legatee, was born December 8, 1912. He and his mother lived in Tucson, Arizona, until 1922, after the death of Richard's father in 1917, and then moved to Los Angeles, California. After the death of his father and until his marriage in 1933, Richard was supported mainly by the income from a trust fund left by his father and by his mother. By the time Richard became twenty-one, the income from the trust fund was greatly diminished. Richard's father was a brother of the decedent, Mrs. Jenkins.

Mr. and Mrs. Jenkins visited Richard and his mother in December, 1917, and remained six weeks to help handle the Rice estate. Richard's father left about $200,000 in

trust to be divided between his widow and Richard. Originally the trust estate netted Richard about $300 a month.

After the death of her husband, Mrs. Jenkins's only blood relatives were her nephew, Richard, and three first cousins.

In 1918, while Richard was five years of age, he and his mother visited the Jenkinses in Chicago and various summer resorts for about three months. Two years later he and his mother again visited the Jenkinses for about two months. Two years later Mr. and Mrs. Jenkins visited Richard and his mother in Los Angeles for about the same period of time. Similar visits were made in 1924 and 1926. Richard's mother married one Patrick O'Rilley in 1919, and this marriage ended in divorce in 1924.

Richard testified that during the aforesaid visits Mrs. Jenkins stated that she loved him and regarded him as her son; that she wanted him to come and live with her and that she wanted to adopt him. He further testified that during the period when he was five to thirteen years old, Mrs. Jenkins always gave him a Christmas present of $100 and a birthday present of $50; that she bought him clothes, two bicycles and other articles. In 1928, when Richard was fifteen years old, Mrs. Jenkins visited for six weeks in the O'Rilley home at Los Angeles. He testified that on these visits, his aunt took full charge of his care, supervised his personal habits and the clothes he was to wear; further that his aunt talked to him about the schools he should attend and on his fourteenth birthday bought him a Chevrolet automobile, and when that was demolished in an accident, gave him money to buy another.

When Richard was fifteen years old, his aunt visited him in Los Angeles for about six weeks. The following year he became ill with pneumonia and Mrs. Jenkins came to Los Angeles and took him to Honolulu to recuperate for six weeks. Again in the summer of 1930, Mrs. Jenkins spent six weeks in Los Angeles and, in the summer of

1933, Richard was the guest of his aunt in Chicago, visiting the World's Fair. When he returned to Los Angeles in the fall of that year he was married. He and his bride then returned to Chicago where he lived in the Jenkins home and attended aeronautical school and night school at Mrs. Jenkins's expense. In the fall of 1934, Richard and his wife returned to Los Angeles so that he might complete his high school course at Mrs. Jenkins's expense. At that time he lived with his mother in Los Angeles, which was his home prior to 1933.

In 1935 Richard and his bride returned to Chicago and he was given employment by Mr. Jenkins in his real-estate business. Richard and his wife then lived in their own apartment.

After Mr. Jenkins's death in 1937, and until Mrs. Jenkins's death in 1950, Richard testified that he saw Mrs. Jenkins almost every day; that when she was adjudged incompetent in 1943, he was appointed conservator and took care of not only her business affairs but supervised her personal welfare. He received a fee of $1200 for work he did for his aunt when he was appointed conservator of her estate and $1000 in cash at the end of the probation of the estate for assisting her.

The pertinent part of the Inheritance Tax Act as it read in 1949, (Ill. Rev. Stat. 1949, chap. 120, par. 375,) provided as follows:

"When the beneficial interests to any property or income therefrom shall pass to or for the use of any father, mother, lineal ancestor of decedent, * * * or to any person to whom the deceased, for not less than ten years prior to death, stood in the acknowledged relation of a parent: Provided, however, such relationship began at or before said person's fifteenth birthday and was continuous for said ten years thereafter: And, provided, also that one of the parents of such person so standing in such

relation shall have been deceased when such relationship commenced, * * *. In every such case the rate of tax shall be: * * *."

The appellees insist that all the requirements of the above section have been met and that in accord with the finding of the county court the deceased stood in the acknowledged relationship of a parent to Richard A. Rice.

The testimony shows that Mrs. Jenkins lavished a great deal of affection upon her nephew, and many times spoke of him as her son. The evidence conclusively discloses, however, that he never called her mother, or ever definitely regarded her as his mother. He always spoke of Mrs. Jenkins as his aunt or Aunt May.

The record and the testimony of Richard and his mother shows that after the death of his father in 1917, he lived with his mother in Tucson and Los Angeles, and was supported by her, or from the property left in trust by his father; that during that period of time his mother gave him full and complete parental care; that she chose the school he should attend, controlled and supervised his education and fed, supported and clothed him until he was fifteen years of age and that she continued that supervision and control until the year 1933, when he was twenty years old, at which time he was married.

Richard further testified that when he was about ten years old he remembered hearing his aunt say in the presence of his mother that she wanted to adopt him but his mother said she would not allow it; that his mother's answer was that she wished to retain Richard as her son legally. Mrs. O'Rilley, Richard's mother, testified that when Mrs. Jenkins stated to her that she wanted to adopt Richard, she objected and stated that she would never give her consent. Richard's mother stated that she loved her son and wanted to keep him. She did not want him to have any other mother, only if Mrs. Jenkins wanted

him to consider her his second mother. Richard's mother did not object to Mrs. Jenkins showering love and affection on Richard because she knew she loved him.

Outside of frequent visits by Mrs. Jenkins to Richard's home, his first permanent residence with Mrs. Jenkins was in 1933, when she furnished board, lodging and care for Richard and his wife.

Much favorable comment can be made as to the generosity, love and affection bestowed upon Richard by his aunt, Mrs. Jenkins, but there is no conclusive testimony showing that she stood in the acknowledged relationship of a parent or that the relationship began prior to Richard's fifteenth birthday as required by the Inheritance Tax Act. On the contrary, Richard's own testimony recites: "Now this was the first time, in other words beginning in 1933, that my aunt, Mrs. Jenkins, actually provided for any partial expense. In other words, she gave me for the first time board and lodging and care both to me and my wife, plus whatever spending money we needed at the time—outside of these visits I made periodically with my mother to my aunt's home on the summer vacations."

In answer to the assertion that Richard was not entitled to the exemption sought because his mother continued to exercise parental care and control over him, the appellees refer to the case of *People* v. *Moczek*, 407 Ill. 373, where the claim was made that the mother, Lydia Rivers, exerted parental care and control over her daughter until after her fifteenth birthday. A stipulation in that case, however, stated that the mother developed mental trouble when her daughter was but twelve years of age, and the evidence further developed that the mother was first committed to the State hospital when her daughter was only ten years of age. In that case the stipulated facts disclosed that William Boyd, the decedent, stood in the acknowledged relation of parent to Frances Moczek. The relationship commenced at an early age, and existed over

a long period of time. In his last will and testament Boyd described Frances Moczek as his "foster daughter." The evidence was conclusive that Boyd had actually furnished a home for Frances Moczek and provided for her practically all her lifetime and that he stood as an acknowledged parent.

The cases cited by appellees from foreign jurisdictions are not persuasive for appellees under the facts disclosed in the present case. It is the judgment of this court that the facts as outlined in this case do not warrant the finding that Mrs. Jenkins stood in the acknowledged relation of a parent to Richard Rice for the period required by the Inheritance Tax Act. Neither do we feel that the appeal taken by the People in this case was improperly perfected or that it should be dismissed.

In the light of the foregoing analysis of the evidence, it is our opinion that the judgment of the county court of Cook County should be reversed and the cause remanded to that court with directions to fix the inheritance tax in this case in conformity with the views expressed in this opinion.

*Reversed and remanded, with directions.*