JUSTICE PERLIN delivered the opinion of the court:[1] The State of Illinois (State) appeals from an order entered December 22, 1982, by Judge Joseph Schneider of the circuit court of Cook County in which he denied defendant’s motion to dismiss and affirmed the inheritance assessment contained in the court’s earlier order of September 30,1982. On February 20, 1979, Gladys Winton (decedent) died testate at age .76. In her will executed November 18, 1974, she bequeathed all but $1,000 of her $237,421 estate to John R. Winton, Jr. (John), who she characterized in the will as “my step-son.” On December 20, 1979, Michael Schiessle, executor of decedent’s estate, filed an inheritance tax return in which he classified John as the “mutually acknowledged son of decedent” and therefore claimed for him the benefits of the preferential tax rate and higher exemption provided by then section 1 of the Inheritance Tax Act. The executor calculated the inheritance tax due to be $7,785.31. On August 14, 1981, the Attorney General, refusing to accord to John Class 1 status, notified the executor of a proposed tax assessment based upon the premise that John was decedent’s “step-son” rather than “a mutually acknowledged child” and therefore entitled only to the exemption and tax rate of the third class of beneficiaries. His proposed assessment resulted in a tax of $44,140.88. On June 1, 1982, Judge Schneider, sitting by assignment pursuant to section 11 of the Inheritance Tax Act, conducted an evidentiary hearing for the purpose of assessing and fixing the inheritance tax due. In the performance of this assignment, Judge Schneider on July 22, 1982, issued his “Memorandum Opinion and Order” in which he found that John was the “mutually acknowledged child” of decedent under section 1 of the Act.[2] On September 30, 1982, Judge Schneider entered his “Order of Circuit Court Judge Assessing Tax.” On December 22, 1982, following a motion by the Attorney General for leave to appeal and a motion by the executor to dismiss, Judge Schneider, sitting in review of his September 30, 1982, order assessing tax, denied the executor’s motion to dismiss and affirmed the tax assessment of September 30, 1982. This case presents two issues on appeal. I The executor contends that the instant appeal is procedurally defective and time-barred by the 30-day proviso of Supreme Court Rule 303 (87 Ill. 2d R. 303(a)), requiring that a notice of appeal to this court from a final judgment or order of the circuit court be filed within 30 days after entry of such judgment or order. The executor argues that when, on July 22, 1982, Judge Schneider entered his memorandum opinion and order, he was “construing” a statute, thereby acting in a judicial rather than an administrative capacity. Thus the executor contends that the order entered on that date was a final “judicial” order subject to Rule 303. Because the State failed to appeal to this court from the July 22, 1982, order within 30 days, the executor urges that the instant appeal is untimely. A similar argument was rejected by our supreme court in In re Estate of Barker (1976), 63 Ill. 2d 113, 120, 345 N.E.2d 484. Relying upon judicial interpretations of the New York statute which was the forerunner of our section 11, the supreme court found that “the assessment of taxes is in its nature an administrative or executive function and not a judicial one.” (63 Ill. 2d 113, 119-20.) The court in Barker found that a circuit judge is constitutionally authorized to assess inheritance taxes under section 11 and the resulting orders are “administrative order[s] and not [final judgments].” 63 Ill. 2d 113, 120. Since the assessment orders issued by a circuit judge under section 11 are not final orders, they are not subject to the 30-day appeal limit of Rule 303. The court in Barker explained that “the term ‘appeal’ as used in section 11 is not used in the same sense as it is used in article VI of the Constitution and Rule 303. Rather it is used in section 11 in the sense of a judicial review of administrative action.” 63 Ill. 2d 113, 120. When, on July 22, 1982, Judge Schneider ordered a redetermination of the Attorney General’s proposed August 14, 1981, inheritance tax assessment, Judge Schneider was acting in an administrative capacity. Likewise, the September 30, 1982, tax assessment order entered by Judge Schneider was an administrative order which was then timely appealed by the Attorney General to the circuit court. Judge Schneider’s December 22, 1982, order affirming his previously entered tax assessment order was a final “judicial” order subject to Rule 303 which the State has now timely appealed to this court. II The parties agree that the only other issue here involved is: In view of the fact that when their relationship began, John was 28 years old, did decedent stand in the “acknowledged relation of parent” to John? The State urges that Judge Schneider’s conclusion that John “has submitted sufficient evidence for a finding that he is the mutually acknowledged child of ,Mrs. Gladys Winton under the Inheritance Tax Act” is error since the court allegedly failed to apply the “objective criteria” which previously had been relied upon by Illinois courts. The following facts were presented in the evidentiary hearing .on June 1, 1982, and are pertinent to our review of the State’s contention: In 1943, at age 19, John entered the Navy. In 1945 he was discharged and joined his parents in California. John’s father, John R. Winton, Sr., and his natural mother, Dorothy, were divorced in California in 1946 and John’s father moved to the Chicago area. John remained in California, and in 1949 he married and entered UCLA. In 1952 John received his degree from UCLA and was recalled to active duty in the Navy. In that same year John’s father married Gladys Winton (decedent) and they continued to live in Chicago. John, stationed in Pensacola, Florida, first met decedent in February 1953 during a three-day “holiday” leave from the Navy. While in the Navy, John was required to make “frequent” training visits to the Glenview Naval Air Station in the Chicago suburb of Glenview. During these visits, John often stayed with his father and decedent in their Chicago home. The attic of their home was “finished” to accommodate John’s visits and to make him more comfortable. During one of these visits John assisted decedent in purchasing an automobile and, to show her gratitude for his assistance, decedent promised to leave the auto to John upon her death. In 1973, John, now age 49, retired from the Navy with the rank of Commander and moved to Santa Fe, New Mexico. He remained in contact with his father and decedent by telephone, letters and “occasional” visits. During one such visit prior to his father’s death in 1974, John prevailed upon his father to place his assets, including bank accounts, into joint tenancy with decedent, thereby enabling her to have access to funds upon John, Sr.’s, death. John, in an affidavit filed with the Attorney General, stated that he was informed by “his father that he was leaving all of his assets to *** decedent and *** John would inherit only after the death of [decedent].” John was aware at that time that if his father’s assets were placed in joint tenancy with decedent, John would not receive a share of those assets upon his father’s death. Following the death of John’s father in 1974, although no visits were made between them due to the expense and decedent’s refusal to travel, John and decedent remained in contact by letter and telephone. In one such letter decedent offered to John $22,000 to ease the financial difficulties resulting from his wife’s extended illness and the construction expenses of his new home in Santa Fe. John declined decedent’s offer at that time but in 1977, following a telephone conversation with decedent in which John indicated he was unable to secure the necessary funds to complete the construction of his house, decedent forwarded to John a bank draft for $10,000. On his own initiative, John executed a promissory note payable to decedent for $10,000 plus 10% interest and made monthly payments until her death. The unpaid balance was listed among the assets of decedent’s estate. At the June 1, 1982, hearing before Judge Schneider, a number of decedent’s letters to John were admitted which indicated that decedent was relying upon John to dispose of certain items of personal property which she apparently did not intend to include in her will. Decedent addressed these letters to “Jackie” (John’s nickname) and signed them “Gladys.” John stated that, although his natural mother was alive and he addressed her as “Mom” or “Dorothy,” he also referred to decedent as “Mom” or “Gladys.” Two other witnesses who testified at the hearing, Beverly Saunders and Doris Jirgrke, longtime family friends of decedent and John, Sr., stated that they heard John refer to decedent as “Gladys,” “Mom” or “Mother” and that decedent referred to John as her “son.” On July 22, 1982, Judge Schneider entered his “Memorandum Opinion and Order” in which he found that John had “submitted sufficient evidence for a finding that he is the mutually acknowledged child of [decedent] under the Inheritance Tax Act.” Judge Schneider then ordered the Attorney General to recompute his August 14, 1981, tax assessment of John’s beneficial interest “to allow for [John’s] proper filing status as a mutually acknowledged child of the decedent.” On September 30, 1982, Judge Schneider entered his “Order of Circuit Judge Assessing Tax,” providing for a redetermined tax in the amount of $8,918.72. It is from this order that the State now appeals. The Illinois Inheritance Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 375 et seq., repealed effective July 1, 1983) was originally enacted in 1895 and was based upon the New York transfer act. Section 1 of the Act provided preferential tax treatment for persons to whom the decedent stood in the acknowledged relation of parent, provided (1) the relationship existed for 10 years prior to decedent’s death, (2) the relationship began prior to the beneficiary’s 15th birthday and (3) the parents of the beneficiary were dead at the time the relationship began. (Ill. Ann. Stat., ch. 120, par. 375, Historical Note, at 140 (SmithHurd 1974).) Section 1 subsequently was legislatively amended and judicially interpreted to include within the preferred class of beneficiaries any lineal descendant of an adopted child or mutually acknowledged child of such decedent (Posler v. People (1957), 11 Ill. 2d 557, 560, 144 N.E.2d 589), eliminate the requirement that the beneficiary’s parents be dead prior to the beginning of the acknowledged relationship (People v. Moczek (1950), 407 Ill. 373, 381, 95 N.E.2d 428), and, in 1970, to eliminate the requirement that the relationship begin prior to the beneficiary’s 15th birthday. In re Estate of Zimmerman (1978), 63 Ill. App. 3d 560, 562-63, 380 N.E.2d 434. The result of these legislative and judicial modifications of section 1 was to “[expand] the breadth of eligibility of” preferred beneficiaries. (In re Estate of Zimmerman (1978), 63 Ill. App. 3d 560, 563.) During oral argument before this court, the State acknowledged this expansion of eligibility but maintained that the criteria previously applied by Illinois courts when determining if decedent stood in the acknowledged relation of parent to the beneficiary should be applied in the instant case. Such criteria, the State urged, include the reception and housing of the beneficiary in decedent’s home and treatment of the beneficiary as a member of decedent’s family (First National Bank v. People (1952), 412 Ill. 29, 30, 104 N.E.2d 630); treatment of the beneficiary by decedent “in every way and manner as his own child,” such as through financial support and maintenance, providing for his education and bestowing love and affection upon the beneficiary (People v. Moczek (1950), 407 Ill. 373, 381, 95 N.E.2d 428); exercise by decedent of parental control, supervision and authority over the beneficiary (People v. Northern Trust Co. (1954), 3 Ill. 2d 285, 289, 120 N.E.2d 543); and the acknowledgment by decedent that decedent is the beneficiary’s parent (People v. Moczek (1950), 407 Ill. 373, 381, 95 N.E.2d 428). Judge Schneider rejected the State’s argument that the court should apply such criteria to the case at bar. In his “Memorandum Opinion and Order” of July 22, 1982, Judge Schneider concluded that “new tests *** have to be devised as obviously the relationship between adults and their parents take on completely different characteristics from those between young children and their parents.” Judge Schneider found that it would be “inappropriate” to require decedent to feed, clothe, educate and maintain a beneficiary who was, as here, an adult at the outset of the relationship. He concluded that the test to be used in the instant case “[was] whether the relationship is of such a kind and character as that of other adults and their parents.” Judge Schneider noted specifically decedent’s alteration of her home to accommodate John’s visits, John’s intervention with his father on decedent’s behalf, decedent’s financial assistance to John and their public expression of one another as “mother” or “son” as examples of the kind of interaction which occurs between adults and their parents. Judge Schneider concluded that there was, in this instance, sufficient evidence to find that decedent stood in the acknowledged relation of parent to John. We believe that the observations of the trial court represent an enlightened and appropriate view. It is a proper function of the courts to determine and enforce the intent of the legislature. To accept the State’s position that the same criteria generally applied in cases where the beneficiary was at the outset of the relationship a minor should be applied as well in cases where the beneficiary was at the outset of the relationship an adult is, in our opinion, unwarranted. As the Illinois Supreme Court noted in People v. Moczek (1950), 407 Ill. 373, 381, 95 N.E.2d 428, such interpretation “would largely, if not completely, nullify the beneficent legislative intent expressed.” The court there noted: “We are not warranted, under the guise of statutory construction, of imputing to the General Assembly an intent to confer merely a still-born right ***.” The court further stated: “*** the Inheritance Tax Act imposes a special tax and, in cases of doubt, its language is to be construed strictly against the State and in favor of the taxpayer.” 407 Ill. 373, 382, 95 N.E.2d 428. We believe that under the circumstances of this case Judge Schneider properly concluded that decedent stood in the acknowledged relation of parent to John. Judge Schneider’s affirmation of his September 30, 1982, order of tax assessment was, in our opinion, not error. For the reasons herein stated, the order of the circuit court of Cook County is affirmed. Affirmed. STAMOS and HARTMAN, JJ., concur. This opinion will have limited precedential significance since the Illinois Inheritance Act (Ill. Rev. Stat. 1979, ch. 120, par. 375 et seq.) underlying this appeal was repealed by Public Act 82 — 1021, effective July 1, 1983. Transfer of the estate of a decedent dying on or after January 1, 1983, will be subject to the new “Illinois Inheritance and Transfer Tax Law.” Ill. Rev. Stat., 1982 Supp., ch. 120, par. 405 et seq. The new act eliminates the beneficiary classification scheme heretofore provided under section 1 of the repealed act and renders moot issues of the nature here involved. Henceforth the State transfer tax will be determined in accordance with the maximum tax credit allowable against the Federal estate tax. Obviously, the reasoning we employ in the instant case and the authorities cited herein relate to the act previously in effect. included among the preferred beneficiaries listed in section 1 was “any person to whom decedent, for not less than 10 years prior to death, stood in the acknowledged relation of a parent, or to any decedent of such person if that relationship began at or before such person’s 15th birthday and was continuous for ten years thereafter.”