SOCORRO HERNANDEZ *et al.*, Plaintiff-Appellee, v. TYRONE FAHNER, Attorney General, Defendant-Appellant.

First District (4th Division)   No. 84—501

Opinion filed July 25, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Gladys Stevens, Assistant Attorney General, of Chicago, of counsel), for appellant.

Barbara Kahn and Heidi Noun, both of Legal Assistance Foundation of Chicago, Thomas Johnson, of Uptown Peoples Law Center, and Judith Mc-Cue, of Keck, Mahin, & Cate, all of Chicago, for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs, Socorro Hernandez, Ubaldo Carreonn, and Laverene Hope Chambers, filed a complaint on September 28, 1981, against defendant, former Attorney General Tyrone Fahner, seeking a declaratory judgment that the term "person" as used in the Crime Victims Compensation Act applies to all applicants and that defendant's policy of requiring applicants to submit documentation to prove the victim's citizenship or status as a legal alien is unlawful. On April 26, 1983, the trial court granted plaintiffs' motion for summary judgment. On May 26, 1983, plaintiffs moved to vacate that portion of the court's April 26, 1983, order denying them attorney fees. On January 31,

1984, the trial court issued its final order and awarded plaintiffs attorney fees. Defendant now appeals the court's summary judgment in favor of plaintiffs and its order granting plaintiffs attorney fees.

On appeal, defendant argues that (1) the Illinois Court of Claims has exclusive jurisdiction over plaintiffs' action; (2) the trial court erred in finding the Attorney General was not authorized to require applicants to submit proof of the victim's immigration status; and (3) the court erred in granting plaintiffs' request for attorney fees. Conversely, plaintiffs argue that the action of the Attorney General has rendered the merits of this case moot and defendant failed to timely file this appeal.

We affirm.

The record indicates that plaintiffs applied for benefits under the Illinois Crime Victims Compensation Act (the Act) (Ill. Rev. Stat. 1981, ch. 70, par. 71 *et seq.*). The Act provides compensation for crime victims who incur financial hardship as a result of being criminally victimized and for families of crime victims who incur additional expenses or financial hardship due to the death of the crime victim. (See Ill. Rev. Stat. 1981, ch. 70, par. 71 *et seq.*) Plaintiffs were denied benefits because they failed to submit documents verifying citizenship or legal alien status of the victims.

The Attorney General, acting in his capacity as administrator of the Act, informed plaintiffs that their claims would be denied because they failed to produce evidence that the crime victims were "legal" aliens or "citizens." The Attorney General, through his crime victim division, prepares the information forms sent to claimants, furnishes claimants with all the necessary forms to file a claim, processes all claims for benefits under the Act, prepares investigation reports recommending to the Illinois Court of Claims that the application be approved or denied, and prepares the Illinois Court of Claims' opinions that are sent to claimants. The Illinois Court of Claims, although not required to, has always followed the Attorney General's recommendation as to claims under the Act.

OPINION

Plaintiffs claim that the court no longer has jurisdiction over the merits of the case because defendant's action had rendered the merits moot. Plaintiffs state that although the trial court's decision did not require the Attorney General to change his policy, he has done so and no longer inquires into the victim's immigration status in processing claims under the Act. Even assuming, *arguendo*, that the Attorney General's action has rendered the merits of this case moot, the pri-

mary issue in this case is of sufficient public interest to warrant the court's consideration.

In ascertaining whether the public interest exception to the mootness rule applies, three criteria must be considered: (1) the public nature of the question; (2) the desirability of an authoritative determination for the purpose of guiding public officers; and (3) the likelihood the issue will recur. (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 622, 104 N.E.2d 769, 772; *Environmental Protection Agency v. Pollution Control Board* (1980), 88 Ill. App. 3d 71, 76, 410 N.E.2d 98, 103, *rev'd on other grounds* (1981), 86 Ill. 2d 390.) The central issue before the court is whether the Attorney General, a public officer, has exceeded his statutory authority in requiring applicants for compensation under the Act to submit documents to prove the victim was or is a citizen or legal alien. This issue is public in nature; its outcome will impact upon many future applicants for compensation under the Act. As plaintiffs indicate, this policy primarily affects the hispanic community. Hispanics represent a significant percentage of applicants for compensation under the Act. Second, an authoritative determination is needed so that the Attorney General will understand the limits of his discretion and duty in implementing the Act. Lastly, the Attorney General no longer inquires into a victim's immigration status in processing applicants' claims, although the trial court's decision did not require him to do so. Thus, he is free to change his policy and inquire into the victim's immigration status. Therefore, it is likely the issue will recur in the future. Accordingly, we hold this case is justiciable under the public interest exception to the mootness doctrine.

Plaintiffs next contend that this court is without jurisdiction to entertain the merits of this case on appeal because defendant failed to timely file this appeal. They argue that defendant's failure to file an appeal within 30 days of the trial court's April 26, 1983, order leaves the appeals court without jurisdiction to hear the case on its merits. The trial court, in its April 26, 1983, order, granted plaintiffs' motion for summary judgment and found that (1) the word "person" as used in the Crime Victims Compensation Act meant every human being regardless of the person's immigration status; (2) the defendant's practice of inquiring into or otherwise requiring proof of the victim's citizenship or legal alien status as a condition of eligibility for compensation violates the Act; and (3) plaintiffs were not entitled to attorney fees.

Where the circuit court enters a final order or judgment, a party to the action has 30 days within which to file an appeal (87 Ill. 2d R. 303(a)), and, for purposes of Supreme Court Rule 303, an order is fi-

nal if it "terminate[s] the litigation between the parties on the merits of the cause," or "disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof." (*Village of Niles v. Szczesny* (1958), 13 Ill. 2d 45, 48, 147 N.E.2d 371, 372.) If the order determines "the ultimate rights of the parties with respect to distinct matters which have no bearing on other matters left for further consideration or if the matters left for future determination are merely incidental to the ultimate rights which have been adjudicated," it must be considered final. (*Barnhart v. Barnhart* (1953), 415 Ill. 303, 308-09, 114 N.E.2d 378, 381.) However, as long as any party's timely post-trial motion remains undisposed, the underlying judgment is not final, and complete jurisdiction remains in the circuit court. *In re Marriage of Uphoff* (1983), 99 Ill. 2d 90, 95, 457 N.E.2d 426, 428.

The record shows that on May 26, 1983, plaintiffs filed a timely post-trial motion requesting the trial court to vacate that portion of its April 26 order denying them attorney fees and for an award of such fees. The court, on October 27, 1983, vacated the portion of its April 26 order denying plaintiffs attorney fees. On January 31, 1984, the court issued its final order, which awarded plaintiffs $14,300 in attorney fees. Defendant, on February 23, 1984, filed a notice of appeal of the trial court's April 26, 1983, order and its January 31, 1984, order.

Plaintiffs assert that their post-trial motion on May 26, 1983, extended only the trial court's jurisdiction as to the issue of attorney fees and not as to the merits of the case. This is so, they argue, because the issue of attorney fees is incidental to the merits of the case. Plaintiffs cite no case holding that the issue of attorney fees is incidental to the merits of the case, nor did our research reveal any case so holding.

■ Supreme Court Rules 303(a) and 304(a) (87 Ill. 2d Rules 303(a), 304(a)) are dispositive of plaintiffs' argument. Plaintiffs' request for attorney fees is a "claim" as that term is used in Rule 304(a). Rule 304(a) provides in pertinent part as follows:

"If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal." (87 Ill. 2d R. 304(a).)

The attorney fees claim meets all of the criteria set out in Rule 304(a). It is a matter involved in the action; it is a possible right of

378

plaintiffs and a possible liability for defendant. (*Hise v. Hull* (1983), 116 Ill. App. 3d 681, 684, 452 N.E.2d 372, 374.) Because the request for attorney fees is a "claim" under Rule 304(a), it is not an incidental issue.

■■ Plaintiffs' timely post-trial motion of the trial court's April 26, 1983, order extended jurisdiction in the trial court until disposal of plaintiffs' motion. (*In re Marriage of Uphoff* (1983), 99 Ill. 2d 90, 95, 457 N.E.2d 426, 428.) The 30-day period for filing a notice of appeal runs from the final judgment, which, in the instant case, was on January 31, 1984, the day the circuit court disposed of the last pending motion. This motion not only extended the trial court's jurisdiction but also extended the appellate court's potential jurisdiction, the time within which a notice of appeal may be filed, until 30 days after the last pending post-trial motion. (*In re Marriage of Uphoff* (1983), 99 Ill. 2d 90, 95, 457 N.E.2d 426.) We hold that defendant's notice of appeal, filed on February 23, 1984, was timely since it was within the 30-day period required by Rule 303(a).

■■ Defendant contends that the trial court was without jurisdiction to entertain plaintiffs' action because it is one for recovery of money against the State and is, therefore, within the exclusive jurisdiction of the Illinois Court of Claims. The determination of whether a suit is brought against the State and within the exclusive jurisdiction of the Illinois Court of Claims depends on two factors: the issues raised, and the relief requested. *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 186, 470 N.E.2d 1029, 1038; *Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 37, 101 N.E.2d 71, 72.

Where an action is maintained against a State officer or the director of a State agency on the grounds that while claiming to act for the State he violates or invades protectable rights under an assumption of authority which he does not have, such a suit is not against the State. (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 548, 370 N.E.2d 223, 227.) However, even if plaintiffs' claim satisfies the aforementioned test, the Illinois Court of Claims retains jurisdiction over the claim if it is a present claim that has the potential to subject the State to liabilities. *Ellis v. Board of Governors* (1984), 102 Ill. 2d 387, 395, 466 N.E.2d 202, 207.

Plaintiffs contend the trial court has jurisdiction because this is a claim to enjoin the Attorney General from acting in the future in excess of his authority. Plaintiffs rely upon the following cases to support their argument: *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223, *County of Cook v. Ogilvie* (1972), 50 Ill. 2d 379, 280 N.E.2d 224, and *People ex rel. Freeman v.*

*Department of Public Welfare* (1938), 368 Ill. 505, 14 N.E.2d 642. They argue that these cases stand for the proposition that if a plaintiff is not attempting to enforce a present claim against the State, but rather seeks to enjoin a State officer from taking future action in excess of his delegated authority, then the immunity prohibition does not pertain. *Ellis v. Board of Governors* (1984), 102 Ill. 2d 387, 395, 466 N.E.2d 202, 206-07.

Defendant argues that the court's holding in *Ellis* undermines the holding of those cases cited by plaintiffs and presents a new approach to the sovereign-immunity issue. In *Ellis,* plaintiff alleged that she had been discharged from her tenured position as a professor without good cause. She sought an award of money damages for lost wages or, in the alternative, temporary disability from the year of discharge to the date the case was decided and injunctive relief reinstating her to her tenured position. The court held that plaintiff's claim was a present claim which had the potential to subject the State to liability and plaintiff's actions based upon an alleged violation of statute seeking injunctive relief was one against the State and within the exclusive jurisdiction of the Illinois Court of Claims. *Ellis v. Board of Governors* (1984), 102 Ill. 2d 387, 395, 466 N.E.2d 202.

Defendant, in arguing that the court's decision in *Ellis* has undermined the cases cited by plaintiffs, relies upon the court's holding in *Brucato v. Edgar* (1984), 128 Ill. App. 3d 260, 470 N.E.2d 615, which cites to the *Ellis* holding to support its decision. Defendant indicates that the court in *Brucato* held as *Ellis* held—that if an action has the potential to control the action of the State and subject it to liability, it must be brought in the Illinois Court of Claims.

However, in underscoring the holding of those cases, defendant failed to emphasize that those cases were present claims brought against the State. Whether or not the claim is a present one is an important distinction. Moreover, the court in *Ellis* indicated that the present-future distinction is an important factor in ascertaining whether or not the claim is one against the State. The following quote from *Ellis* indicates the importance of the present-future claim distinction:

> "As the appellate court correctly noted, *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, stands for the proposition that if a plaintiff is not attempting to enforce a present claim against the State, but rather seeks to enjoin a State officer from taking future actions in excess of his delegated authority, then the immunity prohibition does not pertain. [Citation.] However, we agree with the appellate court that the

plaintiff's suit in the instant case is clearly based upon a present claim which has the potential to subject the State to liability ***." *Ellis v. Board of Governors* (1984), 102 Ill. 2d 387, 395, 466 N.E.2d 202, 206-07.

Because defendant failed to realize the importance of the present-future distinction, his reliance upon *Brucato* is misplaced. The court in *Brucato* noted that although plaintiff's prayer for relief was framed in equitable terms, a reading of the complaint in its entirety indicated that the principal relief sought was monetary judgment for the difference between the wages paid to her and those paid to Cook County personnel. (*Brucato v. Edgar* (1984), 128 Ill. App. 3d 260, 267, 470 N.E.2d 615, 620.) Therefore, plaintiff's claim was a present claim, although the court did not expressly so indicate. Unlike the plaintiffs in *Ellis* and *Brucato*, plaintiffs here are not seeking compensation for past harm and monetary damages (present claim) but, rather, seek to enjoin the Attorney General from acting in excess of his statutory authority in the future.

Defendant further argues that this action is one against the State because the trial court's decision enabled plaintiffs to recover money against the State in the Illinois Court of Claims. Plaintiffs received compensation after the Attorney General voluntarily reconsidered their claims, and plaintiffs no longer had to furnish proof of the victim's immigration status or citizenship. The record shows that the trial court did not award plaintiffs any compensation nor did they request damages or monetary compensation from the circuit court.

The trial court may retain jurisdiction in sovereign immunity cases although an indirect effect of its decision resulted in or might result in future payments from the State treasury. (See, *e.g., City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 384 N.E.2d 310; *County of Cook v. Ogilvie* (1972), 50 Ill. 2d 379, 280 N.E.2d 224.) Thus, plaintiffs' subsequent award of compensation as a result of the trial court's decision is not dispositive of the issue whether or not plaintiffs' suit is one against the State. (*City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 126, 384 N.E.2d 310; *Board of Education v. Cronin* (1979), 69 Ill. App. 3d 472, 475, 388 N.E.2d 72, 74.) We hold that because plaintiffs' suit is one to enjoin the Attorney General from taking action in the future in excess of his statutory authority, the trial court had jurisdiction over plaintiffs' suit.

Defendant next argues the trial court erred in finding that his policy of requiring proof of the victim's immigration status or citizenship violated the Act and therefore should not have granted plaintiffs' request for declaratory relief. The grant or denial of declaratory relief

is discretionary. (*Howlett v. Scott* (1977), 69 Ill. 2d 135, 142, 370 N.E.2d 1036, 1039.) Absent an abuse of that discretion, the trial court's determination will not be disturbed on appeal. (*Wills v. O'Grady* (1980), 86 Ill. App. 3d 775, 779, 409 N.E.2d 17, 19.) Nonetheless, the trial court's exercise of this discretion is subject to a searching appellate review and is not given the same deference as is the trial court's exercise of discretion in other contexts. *Chicago & Eastern Illinois R.R. Co. v. Reserve Insurance Co.* (1981), 99 Ill. App. 3d 433, 436, 425 N.E.2d 429, 432.

The trial court's decision to grant plaintiffs' request for declaratory relief was based on its findings as to what is meant by the word "person" and to whom it applies, as used under the Act. It found the Attorney General's policy of making the victim's alien status a factor in determining eligibility from compensation under the Act was unauthorized because the word "person" as used in the Act meant every human being regardless of immigration status.

Section 6.1 of the Act (Ill. Rev. Stat. 1981, ch. 70, par. 76.1), provides that a "person" is entitled to compensation under the Act if he complies with the six conditions set out therein. The victim's immigration status is not mentioned in any of the six conditions. Moreover, we can find nothing in the provisions of the Act of a restriction on eligibility premised upon the victim's immigration status. The legality of the Attorney General's policy, therefore, primarily depends upon who is a person under the Act.

■ The words used in a statute are to be given their ordinary and popularly understood meaning. (*Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 194, 381 N.E.2d 222, 224.) In finding that the word "person" meant all persons regardless of immigration status or citizenship, the trial court relied upon *People v. Moczek* (1950), 407 Ill. 373, 95 N.E.2d 428. In *Moczek*, the court held that the word "person" as used in the Inheritance Tax Act meant illegitimate as well as legitimate. (*People v. Moczek* (1950), 407 Ill. 373, 381, 95 N.E.2d 428.) The trial court reasoned that the court in *Moczek* broadly defined the word "person" and it should broadly define it also. We see no error in the trial court's reasoning. It was well within its discretion to define the word "person" as it did.

The heart of defendant's argument is that the authority for his actions can be found in the broad discretionary power given him pursuant to section 4.1 of the Act (Ill. Rev. Stat. 1981, ch. 70, par. 74.1). While the provision defendant relies upon sets forth the powers and duties of defendant, including a general grant of rulemaking authority, it cannot be used to justify a policy that is inconsistent with or

exceeds the specific language of the Act. A State agency or official cannot impose by regulation or practice requirements inconsistent with the statute conferring authority to that official. (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 551, 370 N.E.2d 223, 228.) An argument similar to that which defendant offers here was advanced by the defendant in *Bio-Medical Laboratories, Inc.* There, the court rejected the defendant's argument that his authority to perform the act in question was found in the broad discretionary power given him. The court observed that an administrative official who is granted discretionary rulemaking authority by the legislature must be guided by "intelligible standards" when he exercised his discretion. Those standards are to be found in the statute granting the agency its authority. *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 551, 370 N.E.2d 223.

■ The administrative powers and duties granted to the Attorney General did not authorize him to ignore the precise and definite eligibility provisions contained in the statute itself. Thus, the trial court did not abuse its discretion in finding that the Attorney General's policy of requiring proof of immigration status or citizenship of the victim was unauthorized.

■■ Lastly, defendant argues that the trial court erred in finding that plaintiffs were entitled to attorney fees as provided in section 14—1(b) of The Illinois Administrative Procedure Act (Ill. Rev. Stat. 1981, ch. 127, par. 1014.1(b)). This section states as follows:

"In any case in which a party has any administrative rule invalidated by a court for any reason, including but not limited to the agency's exceeding its statutory authority or the agency's failure to follow statutory procedures in the adoption of the rule, the court shall award the party bringing the action the reasonable expenses of the litigation, including reasonable attorney's fees." (Ill. Rev. Stat. 1981, ch. 127, par. 1014.1(b).)

Defendant contends that section 14.1(b) does not apply for two reasons: the Attorney General's office is not an agency, and the policy invalidated was not a rule. The Attorney General's role in administering the Act is substantially similar to that of staffs of other agencies administering and implementing benefits programs. In addition, the Act gives the Attorney General the authority and responsibility to promulgate rules governing the operation and implementation of the Act.

An administrative agency is a body created by the State for carrying into effect the will of the State as expressed by the General Assembly. (*Palmyra Telephone Co. v. Modesto Telephone Co.* (1929), 336

Ill. 158, 163, 167 N.E. 860, 862.) Based on the function of the Attorney General's office in implementing the Act and its authority to promulgate rules governing the Act, we conclude that, for the purpose of implementing the Act, the office of the Attorney General is an administrative agency.

■■■ Section 3.09 of The Illinois Administrative Procedure Act (Ill. Rev. Stat. 1981, ch. 127, par. 1003.09), defines a "rule" as follows:

" 'Rule' means each agency statement of general applicability that implements, applies, interprets, or prescribes law or policy, but does not include (a) statements concerning only the internal management of an agency and not affecting private rights or procedures available to persons or entities outside the agency, (b) informal advisory rulings issued pursuant to Section 9, (c) intra-agency memoranda or (d) the prescription of standardized forms." (Ill. Rev. Stat. 1981, ch. 127, par. 1003.09.)

Defendant's policy affects the private rights and procedures available to persons outside the crime victim division of the Attorney General's office. (*Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 178, 470 N.E.2d 1029, 1034.) The policy is an agency statement of general applicability and is not a statement dealing only with the internal management of the agency. Therefore, the Attorney General's policy is a rule within the definition of The Illinois Administrative Procedure Act. We hold the trial court did not err in granting plaintiffs' request for attorney fees.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.