SCOT LAD FOODS, INC., Plaintiff-Appellee, v. FIRST BANK AND
TRUST COMPANY, Defendant-Appellant.

Fifth District   No. 5—88—0460

Opinion filed November 13, 1989.

Donald G. Musick and Warren N. Loar IV, both of Musick & Mitchell, P.C., of Mt. Vernon, for appellant.

Donald V. Ferrell and Michal Doerge, both of Jelliffe, Ferrell & Morris, of Harrisburg, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Scot Lad Foods, Inc., filed this action for declaratory judgment to have the circuit court determine the respective rights of the plaintiff and defendant, First Bank and Trust Co., in the proceeds from a sale of collateral in which both parties had a perfected security interest. The circuit court found for plaintiff. Defendant appeals and raises the following issues: whether the trial court abused its discretion when it found that plaintiff had a perfected security interest with priority over defendant's perfected security interest and whether the trial court abused its discretion in deciding in favor of plaintiff on the issue of disputed expenses. This court affirms.

The record reveals the following facts. Eugene Bolerjack operated a retail grocery store known as Bolerjack's Market. On December 15, 1975, Bolerjack entered into a security agreement with plaintiff. Plaintiff filed a financing statement with the Secretary of State on December 22, 1975. On December 2, 1980, and December 4, 1985, plaintiff filed continuation statements. Plaintiff also filed the financ-

ing statement and continuation statements with the Jefferson County clerk. In the security agreement, Scot Lad Foods, Inc., and Evansville Food Distributors are listed as secured parties. Federal Wholesale was formerly known as Federal Wholesale Corporation and had been a wholly owned subsidiary of plaintiff, but on August 29, 1974, Federal Wholesale was merged into plaintiff. Evansville Frozen was formerly known as Evansville Food Distributors, Inc., and was a wholly owned subsidiary of plaintiff. On June 30, 1979, Evansville Food Distributors, Inc., was merged into plaintiff. Although these companies had merged, they continued to operate under names other than Scot Lad Foods, Inc.; however, Scot Lad Foods, Inc., billed Bolerjack's Market. On March 7, 1985, Bolerjack entered into a security agreement with defendant. Both security agreements covered the store's inventory.

When Bolerjack defaulted, the parties, by agreement, sold Bolerjack's remaining inventory. The proceeds of the sale totalled $58,000. On the date of the hearing, April 4, 1988, Bolerjack owed plaintiff $55,886.57 and defendant $243,572.44.

On July 7, 1988, the court entered its judgment for plaintiff. The court found that plaintiff's security interest was superior to defendant's. Defendant appeals.

The first issue before this court is whether a security interest is valid where the secured party listed in the agreement is the parent corporation.

Defendant argues that a party whose name does not appear on a financing statement cannot be held to have a perfected security interest. Defendant specifically points out that section 9—402(1) of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1987, ch. 26, par. 9—402(1)) requires that the financing statement set forth the secured party's name and address. In this case defendant argues that Scot Lad Foods, Inc., is not a secured party because Bolerjack's Market did not transact business with it but rather with Federal Wholesale and Evansville Frozen, and thus, the security agreement did not comply with section 9—402(1).

As a general rule, a court of review will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. (*Green v. City of Chicago* (1978), 73 Ill. 2d 100, 110, 382 N.E.2d 1205, 1210.) Furthermore:

> "The granting or denying of a request for declaratory relief is a matter for the sound discretion of the trial court; to disturb its ruling on review there must have been an abuse of its

discretion." (*Mendelsohn v. CNA Insurance Co.* (1983), 115 Ill. App. 3d 964, 968, 451 N.E.2d 919, 922-23.)

The issue before this court requires analysis of the relevant UCC sections.

■■ The UCC was established not only to create security interests with an established priority but also to provide notice of that interest to third parties. (Ill. Ann. Stat., ch. 26, par. 9—101 *et seq.*, Introductory Comment, at 5 (Smith-Hurd 1974).) It is sections 9—110, 9—208 and 9—402 which collectively embody the concept of notice filing. (Ill. Rev. Stat. 1987, ch. 26, pars. 9—110, 9—208, 9—402.) The purpose of notice filing is to provide purchasers from and creditors of the debtor notice of the interest of the secured party. (Ill. Ann. Stat., ch. 26, par. 9—101 *et seq.*, Introductory Comment, at 5 (Smith-Hurd 1974).) Furthermore, the underlying scheme of the UCC is to "make distinctions, where distinctions are necessary, along functional rather than formal lines. This has made possible a radical simplification in the formal requisites for creation of a security interest." Ill. Ann. Stat., ch. 26, par. 9—101, Uniform Commercial Code Comment, at 18 (Smith-Hurd 1974).

■■ The purpose of a financing statement is to place third parties on notice that another party may have a perfected security interest in the described collateral. (*In re Martin Grinding & Machine Works, Inc.* (N.D. Ill. 1984), 42 B.R. 888.) However, the potential secured party cannot learn the "true nature" of the secured transactions from that notice. (*In re Bob Schwermer & Associates, Inc.* (N.D. Ill. 1983), 27 Bankr. Rep. 304.) As long as the financing statement does not contain errors which are seriously misleading, the security interest is valid. (27 Bankr. Rep. at 309.) The purpose of this rule is to "discourage the fanatical and impossibly refined reading of such statutory requirements." (27 Bankr. Rep. at 309.) This concept of notice filing allows the courts to avoid placing form over substance, thereby preventing a subsequent secured party from acquiring a first and prior secured interest upon a mere technicality. *In re Seco, Inc.* (C.D. Ill. 1986), 64 Bankr. Rep. 368, 371.

■ In this case, defendant had notice of the prior secured agreement in the same collateral. Although the name of the creditor is different than the actual name of the business which conducted business with Bolerjack's Market, the financing statement placed defendant on notice of the prior secured interest. The financing statement need not have given defendant the nature of the security agreement, but it provided defendant reason to investigate that interest and question Bolerjack's Market. If defendant had questioned Bolerjack's Market,

it would have discovered that although Scot Lad Foods, Inc., merged with Federal Wholesale and Evansville Frozen, Bolerjack's Market continued to do business with Federal Wholesale and Evansville Frozen and was billed by Scot Lad Foods, Inc. The underlying policy is to give notice to a subsequent party who is considering placing a secured interest in the identically described collateral which already is part of a prior valid secured interest. This court finds that plaintiff's secured interest is valid and further finds that the trial court did not err when it found plaintiff's security interest was superior to defendant's.

Defendant cites *In re E.A. Fretz Co.* (5th Cir. 1978), 565 F.2d 366, for the proposition that if a party's name does not appear on a financing statement, it cannot have a perfected security interest. This court reads *Fretz* as distinguishable.

In *Fretz*, the security agreement secured payment of all debts owed by Fretz to "Revlon, Inc. and/or all of its present and future divisions and affiliates." When Fretz filed a voluntary petition in bankruptcy, two of Revlon's wholly owned subsidiaries assigned their claims against Fretz to Revlon. Eventually, the two subsidiaries attempted to assert perfected security interests under the umbrella of Revlon's security agreement with Fretz. The Fifth Circuit found that the UCC does not contemplate " 'floating secured parties,' that is, an open-ended class of creditors with unsecured and unperfected interests who, after the debtor's bankruptcy, can assign their claims to a more senior lienor and magically secure and perfect their interests under an omnibus security agreement and financing statement." 565 F.2d at 369.

In this case, there was no assignment of interest but instead a corporate reorganization. The merger's purpose was not to perfect an unperfected interest in light of a pending bankruptcy proceeding. In this case, a valid perfected interest was created from the beginning. Defendant was put on notice that a valid perfected security interest was created in favor of Scot Lad Foods, Inc., which merged with Federal Wholesale before the security agreement was created. Defendant was also on notice that Evansville Frozen was a secured party from the beginning. In *Fretz*, the wholly owned subsidiaries were not part of the original security agreement but only included in a "floating secured party" clause. Even with that clause, the subsidiaries had to assign their rights to Revlon in order to have a senior perfected interest. This court finds defendant's argument without merit.

■ The second issue is whether the trial court abused its discre-

tion when it decided in favor of plaintiff regarding disputed expenses. Defendant argues that the court erred because there was no evidence produced to support the deductions from the sale of the proceeds. Defendant disputes the expenses for utilities ($3,938.73), for security services ($716.03), and for attorney fees ($1,500).

The security agreement between plaintiff and Bolerjack's Market provided:

> "The net proceeds realized upon any disposition of the collateral, after deduction for the expenses of retaking, holding, preparing for sale, if any, selling or the like and the reasonable attorney's fees and legal expenses incurred by secured parties, shall be applied in satisfaction of the obligation secured thereby. The secured parties will account to the debtor for any surplus realized on such disposition and the debtor shall remain liable for any deficiency."

At the hearing, plaintiff submitted a summary of the sale of proceeds. Plaintiff informed the court it would submit an itemized bill of the expenses. Without objection, plaintiff further stated that it was "agreed that [the expenses] are admissible for the Court's examination if they're usual and customary expenses to be recovered." This court finds that the trial court did not abuse its discretion because the expenses are reasonable and customary. The proceeds from the sale of the inventory were $58,000, and the total expenses were $7,285.33, including the retaking, holding and sale of the inventory.

For the foregoing reasons, the judgment of the circuit court of Jefferson County is affirmed.

Affirmed.

HARRISON and RARICK, JJ., concur.