178

*In re* ESTATE OF FREDERICK B. BRAUN, Deceased (The First National Bank of Chicago *et al.*, Ex'rs, Petitioners-Appellees, v. Susan Braun, n/k/a Susan B. Rozinski, Claimant-Appellant).

Second District   No. 2—91—0149

Opinion filed December 6, 1991.

Grossman & Friedman, of Chicago (John A. Simonetti, of counsel), for appellant.

Penny Brown, of Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., of Chicago (Howard M. Cohen, of counsel), for appellees.

Ernest R. Blomquist, of Massucci, Blomquist, Brown & Judson, of Arlington Heights, for *amicus curiae*.

JUSTICE UNVERZAGT delivered the opinion of the court:

Susan Braun appeals from the judgment of the circuit court of Lake County denying her claim that certain contractual obligations arising from a marital settlement agreement between her and decedent, Frederick Braun, could be enforced against the estate of decedent.

On appeal, Susan raises five contentions of error: (1) that the trial court erred in denying her claim for unallocated family support; (2) that the trial court erred in denying her claim for reimbursement of medical insurance premiums paid by her on behalf of the minor; (3) that the trial court erred in denying her claim to $50,000 in life insurance proceeds designated for the benefit of the minor; (4) that the trial court erred in denying her claim for payment of expenses associated with the minor's secondary and college education; and (5) that the trial court erred in denying her claim for reimbursement of attor-

ney fees and costs incurred in providing a defense for the minor, in connection with the charge of murdering Frederick.

Susan and Frederick were married on November 23, 1967. One child, Roger Tracy Braun, was born to the marriage on June 5, 1973. On October 11, 1983, the Brauns were divorced. Incorporated into the judgment for dissolution of marriage was a marital settlement agreement (the agreement).

On December 18, 1988, Frederick was found shot to death. Roger Tracy, Frederick's minor son, was arrested for the murder and charged as an adult with first degree murder. Roger Tracy pleaded guilty. He was sentenced to 32 years' imprisonment in the Department of Corrections.

Shortly after the murder of Frederick Braun, petitioners, the First National Bank of Chicago and Gloria Haffer, co-executors of decedent's will, sought to have the will admitted to probate. A provision of the will provided that if Roger Tracy Braun predeceased Frederick, the bulk of Frederick's estate would be distributed to the son's living descendants, or if no living descendants, in equal shares to decedent's brother, Shepard Braun (*amicus curiae* in this court to petitioners), and decedent's former wife, Susan. The will was admitted to probate on January 6, 1989.

On May 1, 1990, petitioners filed in probate court a petition for instructions, requesting the court to enter a declaratory judgment as to certain provisions of Frederick's will and for instructions as to the disposition of certain assets collected by petitioners. Specifically, petitioners asked the court to declare that because Roger Tracy intentionally and unjustifiably caused the death of Frederick, the minor, for purposes of section 2—6 of the Probate Act of 1975 (Probate Act) (Ill. Rev. Stat. 1987, ch. 110½, par. 2—6), was deemed to have predeceased Frederick. Petitioners asked the court to authorize them to distribute Frederick's personal effects and the residue of his estate in equal shares to Shepard and Susan as well as $300,000 in life insurance and accidental death proceeds and more than $24,000 in United States savings bonds.

On May 3, 1990, Susan filed her claim in probate court against Frederick's estate seeking to enforce certain alleged contractual obligations under the marital settlement agreement. Specifically, Susan sought the costs of Roger Tracy's secondary education and half of the cost of his college education, unallocated support at $400 per month from December 1, 1988, through June 30, 1990, reimbursement for medical premiums paid by Susan on behalf of Roger Tracy after he had committed the murder, payment of the proceeds of a life insur-

ance policy on Frederick's life of which Roger Tracy was the sole beneficiary, and reimbursement of the monies expended by Susan for attorney fees for the minor in the criminal proceeding.[1] Susan sought a total of $288,912.41 from the estate.

Shepherd Braun, as cocontingent beneficiary of Frederick's will, filed objections to Susan's claims under the agreement and asked the court to dismiss the claims against the estate. Petitioners filed their answers and affirmative defenses to Susan's claims, asking the court to deny all the claims. Susan filed a reply to Shepard Braun's objections and a reply to petitioners' answers and affirmative defenses. At the same time, Susan filed her response to petitioners' petition for instructions, requesting that the court enter a declaratory judgment declaring that the residue of Frederick's estate, the life insurance and accidental death proceeds under the policy on Frederick's life, and the United States savings bonds registered in decedent's name be distributed in equal shares to Susan and Shepard Braun.

On or about October 15, 1990, the court heard petitioners' request for instructions. Because Roger Tracy intentionally and unjustifiably caused the death of his father, the court ordered that he was not entitled to receive any property benefit or other interest from his father and was deemed, under section 2—6 of the Probate Act (Ill. Rev. Stat. 1987, ch. 110½, par. 2—6), to have predeceased Frederick. Petitioners, as co-executors of Frederick's will, were authorized to distribute the residue of Frederick's estate in equal shares to Susan and Shepard Braun. Additionally, petitioners were authorized to collect the life insurance and accidental death proceeds and the United States savings bonds and to add them to the residue for distribution as part of the residue.

Subsequently, a hearing was held on Susan's claims against the estate. Prior to entering its rulings, the court noted that it had considered a stipulation of facts entered into by the parties: the exhibits appended to the stipulation, including the judgment for dissolution, the marital settlement agreement, Frederick's will, and the mittimus of judgment and sentence related to Roger Tracy, and the pleadings filed by the parties as well as the objections filed by the cocontingent beneficiary, Shepard Braun.

The court further noted that, as to each of her claims, Susan posited that the marital settlement agreement was controlling and that the agreement was for her specific benefit. The court disagreed, stat-

---

[1]$180,629.60. The minor pleaded guilty prior to trial.

ing that the agreement was designed to meet the specific needs of Roger Tracy and not the needs of Susan. Taking this fact into consideration along with the fact that Roger Tracy caused his father's death, the court stressed that it could not merely consider Susan's claims in terms of the marital settlement agreement but also must consider them in relation to section 2—6 of the Probate Act (Ill. Rev. Stat. 1987, ch. 110½, par. 2—6). The court acknowledged that, normally, the obligations of a decedent would survive his death but that "this is not a normal situation."

The court addressed each of Susan's claims separately, noting the parties' opposing positions. The court denied each claim, setting forth the specific reasons for each decision. This appeal followed.

The judgment for dissolution of marriage entered into by Susan and Frederick contained a provision providing, in pertinent part, that the marital settlement agreement shall not be merged into the judgment but "shall continue to have independent legal significance and shall be subject to enforcement by either party as in the case of any other contract or agreement." The agreement provided that "it shall be binding upon and inure to the benefit of the heirs, executors, administrators, assigns, devisees, and grantees of the parties hereto." Susan relies on this latter provision to argue that the estate is bound to fulfill certain obligations of the decedent set forth in the agreement. Petitioners maintain, however, that public policy prevents Susan from recovering on any of her claims against the estate. We first consider petitioners' position.

■ Although the law looks with favor upon settlement agreements, the terms of an agreement will not be given effect if procured by fraud or coercion or if contrary to any rule of law, *public policy*, or morals. (*In re Marriage of Lorton* (1990), 203 Ill. App. 3d 823, 825.) This State's public policy is reflected in its constitution, its statutes, and its judicial decisions. (*O'Hara v. Ahlgren, Blumenfeld & Kempster* (1989), 127 Ill. 2d 333, 341.) In deciding whether an agreement that is not otherwise prohibited by law, such as the marital settlement agreement here, violates public policy, the courts must determine whether the agreement is so capable of producing harm that its enforcement would be contrary to the public interest. (*O'Hara*, 127 Ill. 2d at 342.) Such a determination depends on the peculiar facts and circumstances of each case. 127 Ill. 2d at 341-42.

In the instant case, Frederick's minor son pleaded guilty to the charge of first degree murder of Frederick and was sentenced to 32 years' imprisonment. Whether one who intentionally and unjustifiably causes the death of a party to a marital settlement agreement is enti-

tled to receive the benefits of that agreement is a question of first impression in Illinois.

The public policy of this State precludes a wrongdoer from profiting from an intentionally committed wrongful act. (*State Farm Life Insurance Co. v. Davidson* (1986), 144 Ill. App. 3d 1049, 1050.) Here, that public policy is reflected in a statute precluding the minor from receiving any property or benefit by inheritance or "any other circumstance" from the one whose death the minor intentionally caused. (Ill. Rev. Stat. 1987, ch. 110½, par. 2—6.) That statute, section 2—6 of the Probate Act, provides in relevant part:

> "A person who intentionally and unjustifiably causes the death of another shall not receive any property, benefit, or other interest by reason of the death, whether as heir, legatee, beneficiary, joint tenant, survivor, appointee or in any other capacity and whether the property, benefit, or other interest passes pursuant to any form of title registration, testamentary or nontestamentary instrument, intestacy, renunciation, or any other circumstance. The property, benefit, or other interest shall pass as if the person causing the death died before the decedent \*\*\*. \*\*\* A person convicted of first degree murder or second degree murder of the decedent is conclusively presumed to have caused the death intentionally and unjustifiably for purposes of this Section." Ill. Rev. Stat. 1987, ch. 110½, par. 2—6.

Although no provision in the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 101 *et seq.*) excludes a person who intentionally and unjustifiably causes the death of a party to a marital settlement agreement from receiving the benefits of that agreement, we believe the public policy set forth in section 2—6 of the Probate Act, which prevents a wrongdoer from receiving any property, benefit, or other interest from his intentionally committed wrongful act, must be regarded as incorporated in the dissolution legislation. (*Cf. Bailey v. Retirement Board of the Policemen's Annuity & Benefit Fund* (1977), 51 Ill. App. 3d 433, 437-38.) We find, therefore, in light of section 2—6, that the minor, as a result of his intentional and unjustifiable act of murdering decedent, is considered to have predeceased decedent and is not entitled to any benefits of the marital settlement agreement.

■ Susan, however, bases her claims against the estate on the theory that Frederick's contractual obligations under the marital settlement agreement were for her benefit and not for Roger Tracy's benefit and, therefore, are binding upon the estate. Susan maintains the agreement did not inure to Roger Tracy's benefit because he nei-

ther signed the agreement nor was involved in negotiating it. Susan theorizes that because the agreement was for her benefit and because Roger Tracy and not she caused the death of Frederick, the estate is obligated to Susan for the monies sought by her under the terms of the agreement.

Those monies included: monthly family support payments of $400 per month from December 1988, the month of decedent's death, through June 1991, the month in which the minor became 18; an estimated $5,000 for the minor's completion of his secondary education and an estimated $40,000, representing half of the cost of his future college education; reimbursement in the amount of $1,282.81 for medical insurance payments paid by claimant on behalf of the minor from December 1988 through March 1990 when the Department of Corrections assumed medical coverage; proceeds from the life insurance policy on decedent's life in the amount of $50,000 for the use and benefit of the minor as irrevocable beneficiary; and attorney fees totaling more than $180,000 incurred by Susan on behalf of her son.

Susan asserts that the trial court's denials of these sums of money amounted to error and must be reversed. As much of the same reasoning applies to each of Susan's contentions, we consider them collectively.

The interpretation of a marital settlement agreement raises a question of law, and the same rules that apply to the construction of contracts govern such interpretation. (*Rimkus v. Rimkus* (1990), 199 Ill. App. 3d 903, 906.) In interpreting the agreement, the court seeks to give effect to the intention of the parties. 199 Ill. App. 3d at 906.

It is clear from the provisions of the agreement relied upon by Susan (articles II(c), III, V, VI, and VII) that Frederick and Susan intended the provisions for the direct benefit of Roger Tracy. His educational needs were provided for in article II(c) and article VII of the agreement. Under article II(c), Frederick was to pay for Roger Tracy's secondary education at a private institution. Under article VII, Frederick and Susan were to share Roger Tracy's college expenses. These provisions directly benefited Roger Tracy because they ensured that he would receive the education Susan and Frederick intended him to have and that the costs of that education would be assumed by them.

Article V of the agreement provided that Frederick "shall maintain medical insurance for the benefit of the minor." The very terms of this provision demonstrate that it was strictly for Roger Tracy's benefit. Article VI provided that Frederick would maintain a $50,000 insurance policy on his life for the use and benefit of Roger Tracy as

irrevocable beneficiary. Because this article also designated Susan as trustee of the insurance proceeds for Roger Tracy until he attained majority or discontinued or completed his college education, Susan maintains that, upon Frederick's death, she should have had the use of those proceeds for Roger Tracy. However, this theory, like Susan's other theories, presupposes that Roger Tracy outlived Frederick. Such is not the case here where public policy considers Roger Tracy predeceased Frederick. Since Roger Tracy was not entitled to the proceeds, Susan was not entitled to the use thereof.

In a normal situation, Roger Tracy would have had the right to sue the parties or their estates, as third-party beneficiary, to enforce those obligations under the marital settlement agreement which were not fulfilled. (See *Miller v. Miller* (1987), 163 Ill. App. 3d 602.) Thus, the provisions concerning the minor's education and his medical insurance as well as the provision providing for a life insurance policy on the decedent's life were specifically intended for the benefit of the minor, and the court did not err in denying Susan's claims based on her theory that these provisions inured to her benefit.

Nevertheless, even if these particular provisions were intended for Susan's benefit, she would be unable to collect the monies sought under them. Any obligation Frederick's estate had pertaining to the future costs of Roger Tracy's education, the cost of medical insurance for the minor, or the distribution of insurance proceeds on Frederick's life ceased at the time of Frederick's death because Roger Tracy, having taken Frederick's life, was already considered "dead" in the eyes of the law. Consequently, the possibility of Roger Tracy's continuing education was nonexistent. Likewise, medical insurance coverage for Roger Tracy and the distribution of life insurance proceeds to Susan for Roger Tracy's use and benefit were unnecessary.

For the estate to be bound to Susan for her past expenses and future costs on behalf of Roger Tracy as well as for the proceeds of the life insurance policy on Frederick's life, the son had to have outlived his father. That is simply not the case here where public policy considers that Roger Tracy predeceased Frederick. Consequently, the trial court did not err in denying Susan's claims for reimbursement of medical insurance premiums paid by her on Roger Tracy's behalf, for the future costs of Roger Tracy's secondary and college education, and for life insurance proceeds, amounting to $50,000, for the benefit of Roger Tracy.

Susan also claims, under article III of the agreement pertaining to family support, that the estate owes her $12,000. The pertinent portion of that article provided:

"The Husband agrees to pay and the Wife agrees to accept from the Husband as and for the support of herself and the minor child of the parties, the unallocated sum of Four Hundred Dollars ($400.00) per month."

Susan maintains that the estate owes her the $400 monthly allotment from December 1, 1988, through June 30, 1991, the month in which Roger Tracy would have become 18, or emancipated. While at first glance it appears that Susan might be entitled to at least her portion of the monthly sum, closer scrutiny shows that the provision provides that the $400 is for the support of *both* Susan and Roger Tracy and that the sum is to be unallocated. That the monthly amount was never intended for Susan's use alone is supported by article VIII of the agreement. Article VIII provides in pertinent part:

"The parties hereto mutually agree to waive any and all right to maintenance and support each may have against the other and each is forever barred from same."

Consequently, Susan could not claim the monthly $400 sum for her support alone. Moreover, Susan in her brief admits that the monthly support money was for the benefit of her and Roger Tracy "jointly and together."

The fact that article III is entitled "Family Support" implies that to be eligible for the $400 monthly sum Susan and Roger Tracy needed to be residing together as a family unit or that Roger Tracy was in Susan's care. Neither situation existed for the time period in question. The record indicates that at the time of Frederick's death in December 1988 Roger Tracy had been living with Frederick for nearly one year and that, following his arrest on December 21, 1988, Roger Tracy remained in the custody of law enforcement officials. As Roger Tracy never resided with Susan during the period for which she seeks the family support monies, she was not entitled to the monies.

Also, because Roger Tracy, in law, predeceased Frederick, neither Frederick nor the estate would have been obligated to make the family support payments for the period in question. The trial court did not err in denying Susan's claim for past family support payments.

■ Susan also maintains, under article V of the agreement, that she is entitled to reimbursement for the more than $180,000 in attorney fees she incurred for Roger Tracy's defense on the charge of murdering Frederick. Article V is entitled, "Medical, Extraordinary and Dental Expenses," and provides:

"The parties hereby agree that the Husband shall maintain medical insurance for the benefit of the minor child. The parties further agree that the Husband shall be responsible for the

extraordinary medical and dental expenses (including, but not limited to, orthodontia), of the minor child."

Relying on this provision of the agreement, Susan argues that attorney fees are "extraordinary" expenses for which Frederick would have been responsible and for which the estate is now bound to pay.

The mere idea that a murder victim or his estate should be obligated to pay the attorney fees of the victim's murderer is unconscionable. Nevertheless, it is apparent from the very terms of article V that the only extraordinary expenses covered by the provision are the "extraordinary medical and dental expenses" of the minor. The provision is silent as to attorney fees incurred on the minor's behalf. As the court will not add language or matters to a contract about which the document is silent (*Gordon v. Bauer* (1988), 177 Ill. App. 3d 1073, 1088), the trial court was correct in finding that the agreement did not allow for reimbursement of the monies expended by Susan for Roger Tracy's defense.

Generally, a contract survives the death of a party thereto except where the contract requires the continued existence of a particular person or thing for its performance. (*In re Estate of Bajonski* (1984), 129 Ill. App. 3d 361, 366-67.) Here, where the contract, or marital settlement agreement, specifically provided that the estates of the parties were to be bound by the provisions of the agreement, the parties intended that Frederick's obligations under the agreement would survive his death. This intention, however, presupposed that the one to benefit from the obligations would outlive the decedent. Where the one to benefit is considered to have predeceased Frederick, as in the instant case, those obligations become nonexistent. Accordingly, the trial court did not err in finding that contractual obligations, arising from a marital settlement agreement between Susan and Frederick, for the benefit of Roger Tracy could not be enforced against the estate of Frederick.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

WOODWARD and GEIGER, JJ., concur.